<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AAKASH DALAL,** | |
| *Plaintiff,* | |
| v. | **Civil Action No. 20-1434** |
| **JOHN L. MOLINELLI, et al.,** | **OPINION** |
| *Defendants.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendants former Assistant United States Attorney ("AUSA") L. Judson Welle's ("Welle"); FBI Special Agents Corey Coleman's ("Coleman"), Ajit David's ("David"), Tara Jerussi's ("Jerussi"); and former FBI Special Agent James Spence's ("Spence" and, together with Welle, Coleman, David, and Jerussi, the "Federal Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)6). ECF No. 30. <u>Pro se</u> Plaintiff Aakash Dalal ("Plaintiff" or "Dalal") opposes the Motion. ECF No. 46. For the reasons set forth below, the Motion is **GRANTED in part and DENIED in part**.

I. **BACKGROUND**[1]

This action arises out of an alleged conspiracy between the Federal Defendants and a number of state actors (collectively the "State Defendants") to manufacture criminal charges against Plaintiff in order to prevent his release on bail while he awaited trial on a separate

---

[1] The facts are drawn from the Amended Complaint, ECF No. 15, as well as court decisions and other matters of public record. <u>See Mayer v. Belichick</u>, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

indictment stemming from Plaintiff's involvement in a series of attacks on synagogues and a Jewish community center.  See generally Am. Compl.  Plaintiff asserts claims for malicious prosecution, fabrication of evidence, and civil conspiracy under several statutory and common law theories.  See id.

In February and March of 2012, Dalal was charged by complaint in Bergen County Superior Court with allegations of conspiracy, arson, attempted arson, and bias intimidation in connection with a series of incidents whereby Dalal and a co-defendant attacked four synagogues and a Jewish community center in Bergen County.  See State v. Dalal, 221 N.J. 601, 603 (2015) ("Dalal II"); Am. Compl. ¶¶ 18, 24.  The presiding judge of the criminal division at the time set bail at $2.5 million.  Dalal II, 221 N.J. at 603; Am. Compl. ¶ 26.  According to Dalal, the Federal Defendants, State Defendants, and the presiding judge agreed to set Plaintiff's bail at a high amount to ensure that he would not be released.  Am. Compl. ¶ 25.  Dalal requested reduction of bail, and eventually the Appellate Division of the Superior Court of New Jersey reduced bail to $1 million.  See Dalal II, 221 N.J. at 603; Am. Compl. ¶ 59.  Dalal's parents posted bail in early June 2012, and a bail source hearing was scheduled for June 27, 2012 before the presiding judge.  Id. ¶ 69.

In the meantime, Dalal alleges that the Federal Defendants and the State Defendants agreed to plant an FBI informant ("W.S.") at the Bergen County Jail "in a location near Plaintiff for the purposes of eliciting incriminating statements and defense strategy from Plaintiff" while he awaited the bail source hearing.  Id. ¶ 27.  After Dalal's bail was lowered to $1 million, Dalal contends that the State Defendants and presiding judge were "embarrassed and angered."  Id. ¶ 60.  The State Defendants and Federal Defendants thus devised a plan to "fabricate additional criminal charges against Plaintiff for the purpose of preventing his release on bail."  Id. ¶ 61.  According to

Dalal, the Federal Defendants met several times with W.S. and advised him to question Plaintiff about his pending charges in an effort to entrap Plaintiff into hiring W.S. to murder government actors.  Id. ¶¶ 65, 67-68.  The record indicates that W.S. "contacted federal authorities about threats defendant allegedly made against public officials and buildings."  Dalal II, 221 N.J. at 603.

In the days leading up to Dalal's bail hearing, W.S. recorded several conversations with Dalal, but allegedly failed to entrap Dalal into hiring W.S. as a hitman.  Am. Compl. ¶¶ 86-87. Despite this failure, Dalal contends that the State and Federal Defendants agreed to fabricate charges of conspiracy to commit the murder of Defendant Martin Delaney ("Delaney"), Assistant Prosecutor for the Bergen County Prosecutor's Office, id. ¶ 7, against Dalal to prevent his release on bail, id. ¶ 90.  On or around June 27, 2012, the State Defendants appeared before the presiding judge and obtained a search warrant to search Dalal's jail cell.  Dalal II, 221 N.J. at 603.  During the search, State and Federal Defendants found several pieces of incriminating evidence:

> One piece of paper depicts a chart of "ENEMIES" and lists multiple names. [The presiding judge] is listed as a "high profile" enemy.  An assistant prosecutor on the case is also listed and is identified as a "tactical" enemy.
>
> The words "DEAD COPS, DEAD COPS" appear on another sheet of paper, which also features a chart of "ENEMIES."  That chart names the presiding judge and the judge who ruled on defendant's bail at the top of the diagram. The assistant prosecutor and others are listed as well.  Dozens of variations of the signature "Aakash Dalal" also appear on the page.

Dalal II, 221 N.J. at 603-04.  On June 27, 2012, the day of Dalal's bail hearing, the State Defendant's filed a second complaint that charged Plaintiff with conspiracy to murder Delaney, conspiracy to possess a firearm, and terroristic threats.  Id. at 604; Am. Compl. ¶ 97.  Accordingly, the presiding judge set bail at $3 million.  State v. Dalal, 438 N.J. Super. 156, 160 (App. Div. 2014)

("Dalal I");[2] Am. Compl. ¶ 98.  Dalal contends that he never threatened to harm Delaney, conspired

to possess a firearm, or conspired to murder Delaney.  Am. Compl. ¶¶ 101-03.  According to Dalal,

"[b]ut for the collective Defendants' fabrication of the June 27, 2012 charges, Plaintiff would have

been released on bail and would have enjoyed his freedom.  Instead, Plaintiff suffered from

physical and mental distress in solitary confinement and other torture like jail conditions."  Id.

¶ 104.

On March 1, 2013, a Bergen County grand jury returned an indictment charging Dalal with

bias intimidation, criminal mischief, conspiracy to commit arson, aggravated arson, possession of

a destructive device for an unlawful purpose, hindering apprehension, and terrorism associated

with the attacks on the synagogues and Jewish community center (the "First Indictment").  Dalal

I, 438 N.J. Super. at 159-60.  Then, on August 7, 2013, another Bergen County grand jury returned

an indictment charging Dalal with conspiracy to murder Delaney, conspiracy to possess an assault

firearm, and threatening to commit the murder of Delaney (the "Second Indictment").  Id. at 160;

Declaration of Frank P. Kapusinski ("Kapusinski Decl.") Ex. C, ECF No. 10.1; Am. Compl. ¶ 120.

According to Dalal, the State and Federal Defendants agreed to delay the Second Indictment until

after W.S., who is a non-citizen, was removed from the United States in order to prevent the grand

jury from requesting that he appear to testify.  Am. Compl. ¶¶ 108-09.

Dalal's trial on his First Indictment commenced in Bergen County Superior Court in

October 2016.[3]  On November 11, 2016, a jury found Dalal guilty of terrorism, arson, bias

---

[2] Dalal I was reversed by Dalal II, but the facts articulated in both opinions remain relevant for the purposes of this Opinion.

[3] Prior to Dalal's trial, he challenged the validity of his indictment and moved to remove all Bergen County judges from his case.  See Dalal I, 438 N.J. Super. at 160-62.  He also brought a suit in this Court in 2013 while awaiting his state trial, asserting 42 U.S.C. § 1983 ("Section 1983") and Privacy Protection Act claims against members of the media and Bergen County officials.  Dalal v. N. Jersey Media Grp, Inc., No. 13-1257 (D.N.J.), ECF Nos. 1, 15 ("2013 Action").  Then, in February 2014, Dalal filed a separate action in this Court adding several new defendants, including

intimidation, and conspiracy to commit arson, with the most serious charges carrying a mandatory minimum sentence of 30 years.  See Kapusinski Decl. Ex. A; N.J.S.A. § 2C:38-2(b)(1).  On July 26, 2017, following a motion from the State Defendants, a Bergen County judge dismissed the Second Indictment.  Kapusinski Decl. Ex. D.  On July 28, 2017, the state trial court sentenced Dalal to 35 years in prison.  Id. Ex. A.  Dalal contends that the State Defendants dropped the charges brought in the Second Indictment because of a lack of evidence.  Am. Compl. ¶¶ 140, 142, 144.

On August 2, 2017, Dalal filed a SF-95 Federal Tort Claims Act Notice of a Tort Claim with the U.S. Department of Justice, contending that several employees at the FBI's Newark, New Jersey Field Office and U.S. Attorney's Office for the District of New Jersey "conspired with and substantially aided members of the Bergen County Prosecutor's Office . . . in fabricating and prosecuting baseless criminal charges against the claimant and violating the claimant's constitutionally guaranteed rights."  Declaration of Elijah F. Jenkins ("Jenkins Decl.") Ex. A at 3; Am. Compl. ¶ 149.[4]  On July 22, 2019, Dalal brought this action in New Jersey Superior Court. See ECF No. 1.  On February 7, 2020, the U.S. Attorney's Office certified that the Federal Defendants were acting within the scope of their employment at the time the allegations arose, see

---

three Federal Defendants named in the instant action.  See Dalal v. N. Jersey Media Grp., Inc., 14-1333 (D.N.J.), ECF No. 1 ("2014 Action").  On June 13, 2014, Hon. William Martini wrote an opinion administratively terminating the 2014 Action, allowing Dalal to file the Complaint in the 2014 Action as a Second Amended Complaint in the 2013 Action, and granting defendants' motion to stay the 2013 Action pending the entry of a final judgment in the state criminal prosecution.  Dalal v. N. Jersey Medical Grp., Inc., No. 13-1257, 2014 WL 2691698 (D.N.J. June 13, 2014). On December 7, 2015, Dalal sought a preliminary injunction enjoining the Bergen County Prosecutor's Office from prosecuting his pending state criminal case on the grounds that it violated his constitutional rights.  2013 Action, ECF No. 60.  On May 6, 2016, Judge Martini denied the motion and again stayed the 2013 Action pending final judgment in the state criminal prosecution.  Dalal v. N. Jersey Media Grp., Inc., No. 13-1257, 2016 WL 2605986 (D.N.J. May 6, 2016).  Since May 2016, Dalal has taken no other steps to pursue his claims in the 2013 Action.

[4] The SF-95 form specifically lists Defendants Welle, Coleman, Spence, Jerussi, and David as tortfeasors, among others.  Jenkins Decl. Ex. A at 3.

ECF No. 1.1 Ex. C, and on February 12, 2020 the Federal Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1442(a)(1) and 2679(d), ECF No. 1.

On June 11, 2020, Dalal filed the Amended Complaint.  The Amended Complaint alleges malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights against the Federal Defendants related to the charges brought on June 27, 2012.  For each of these allegations, Dalal brings claims under (a) Bivens v. Six. Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens"), (b) Section 1983, (c) the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 et seq. ("NJCRA"), and/or (d) common law.  Dalal seeks injunctive relief against the Federal Defendants as well as compensatory, punitive, and nominal damages.  Am. Compl. at 34.  On July 31, 2020, the Federal Defendants filed the instant Motion, arguing that (1) Dalal fails to state a claim for relief under Bivens, Section 1983, and the NJCRA, (2) the Federal Defendants have immunity, and (3) the Court lacks subject matter jurisdiction over Dalal's tort claims because the United States has not waived immunity.  ECF No. 30.  Dalal opposes the Motion.  ECF No. 46.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)

Federal Defendants' motion to dismiss for failure to state a claim under Bivens, Section 1983, and the NJCRA is properly brought pursuant to Rule 12(b)(6).  In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Because Plaintiff is proceeding pro se, the Court must liberally construe the Amended Complaint under "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "Yet there are limits to [the Court's] procedural flexibility," and "pro se litigants must still allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

### B.      Rule 12(b)(1)

The Federal Defendants' motion to dismiss Dalal's tort common law claim for lack of subject matter jurisdiction is properly brought pursuant to Rule 12(b)(1). See, e.g., Merando v. United States, 517 F.3d 160 (3d Cir. 2008). Under Rule 12(b)(1), a plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, the Federal Defendants' motion is a facial attack because it alleges that the Dalal's claims are barred by sovereign immunity. See Fed. Def. Mem. at 29-36,

ECF No. 30.4.  The Court thus accepts the pleaded facts as true and draws all reasonable inferences in Dalal's favor.  See Constitution Party of Pa., 757 F.3d at 358.

## III.    DISCUSSION

### A.    **Bivens** Claims

Dalal seeks damages under Bivens for malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights claims.  The Federal Defendants argue that the Court should not expand a Bivens remedy to this context.  The Court agrees.

Under Bivens, a damages remedy compensating a person injured by a federal officer who violates her constitutional rights is available in limited circumstances.  In determining whether damages under Bivens is an appropriate remedy, courts first determine whether the case "presents a new Bivens context;" that is, whether "the case is different in a meaningful way from previous Bivens cases."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1859 (2017) ("Abbasi").  If the case meaningfully differs from previous Bivens cases, courts look to see if "special factors counselling hesitation" exist.  Id. at 1857.  "[T]hat inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing the action to proceed."  Id. at 1857-58.  The Supreme Court "has made clear that expanding the Bivens remedy is now a 'disfavored' judicial activity."  Id. at 1857.

First, Dalal's claims are meaningfully different from previously recognized Bivens claims. The Supreme Court has recognized the availability of a Bivens remedy for only three claims: (1) "a claim against FBI agents for handcuffing a man in his own home without a warrant;" (2) "a claim against a Congressman for firing his female secretary;" and (3) "a claim against prison officials for failure to treat an inmate's asthma."  Id. at 1860 (citing Bivens, 403 U.S. 388; Davis v. Passman, 442 U.S. 228 (1979); and Chappell v. Wallace, 462 U.S. 296 (1983)).  Dalal argues

8

that his claims—that he was not released on bail and thus deprived of his liberty as a result of the Federal Defendants' malicious prosecution and fabrication of evidence—do not meaningfully differ from Bivens, because he too alleges a Fourth Amendment violation.

The mere fact that Dalal brings a Fourth Amendment claim, however, does not mean that a Bivens remedy is available.  In fact, the plaintiff in Abassi also brought a Fourth Amendment claim, yet the Supreme Court concluded that a Bivens remedy was unavailable.  See Abassi, 137 S. Ct. at 1853, 1860.  Moreover, in the wake of Abassi, the vast majority of courts—including the Third Circuit and this Court—have declined to extend a Bivens remedy to prosecutorial misconduct and fabrication of evidence cases, finding that these cases present new Bivens contexts.  See, e.g., Pellegrino v. U.S. Transp. Sec. Admin., 896 F.3d 207, 231 (3d Cir. 2018), modified on other grounds 937 F.3d 164 (3d Cir. 2019) (en banc) (malicious prosecution claim against TSA officers); Lane v. Schade, No. 15-1568, 2018 WL 4571672, at *7 (D.N.J. Sept. 24, 2018) (malicious prosecution claim against U.S. Park Service Rangers); Cantú v. Moody, 933 F.3d 414, 423 (5th Cir. 2019) (malicious prosecution claim against FBI officers based on allegations of falsified affidavits); Karkalas v. Marks, No. 19-948, 2019 WL 3492232, at *9-13 (E.D. Pa. July 31, 2019) (claim of "unlawful prosecution and pretrial detention following allegedly false and misleading statements to a grand jury" against Drug Enforcement Agency officer and prosecutor); Farah v. Weyker, 926 F.3d 492, 496-99 (8th Cir. 2019) (claim of "exaggerating and inventing facts in report, hiding evidence that would have exonerated [plaintiffs], . . . pressuring and manipulating the alleged victims into lying[, and] deceiv[ing] prosecutors, the grand jury, and other investigators").[5]

---

[5] Dalal argues that the courts in Cantú and Farah relied on a "flawed reasoning and misapplication of the Abassi factors."  Pl. Mem. at 8 n.3, ECF No. 46.  In Abassi, the Supreme Court listed some examples of how "[a] case might differ in a meaningful way" from Bivens, Davis, and Chappell.  137 S. Ct. at 1860.  The Court explicitly stated,

Second, there are several special factors that counsel hesitation and lead the Court to conclude that expanding the availability of a Bivens remedy to this new context is inappropriate. Here, like in Farah, Dalal's claimed injury was not the direct result of the Federal Defendants' alleged actions, but rather the consequence of intervening "decisions by independent legal actors," 926 F.3d at 499, such as the State Defendants' representations to the presiding judge and the grand jury, the State Defendants' decision to prosecute, and the grand jury's eventual indictment.  For this reason, "an implied cause of action here would pose a greater risk of interference with the other branches of government than it did in Bivens."  Id.; see also United States v. Sells Eng'g Inc., 463 U.S. 418, 424 (1983) (explaining "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings"); Wayte v. United States, 470 U.S. 598, 607-08 (1985) (recognizing that there are "substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute").

For these reasons, the Court declines to extend a Bivens remedy to this context and therefore dismisses Dalal's claims brought pursuant Bivens (Counts II, VI, X, and XIII).

## B.     Section 1983 & New Jersey Civil Rights Act Claims

The Federal Defendants argue that Dalal's malicious prosecution, fabrication of evidence, and conspiracy claims brought pursuant to Section 1983 and the NJCRA should be dismissed for three reasons.  First, the Federal Defendants contend that Dalal cannot sue them under Section

---

however, that such examples were not meant to be an exhaustive list. Id. at 1859. Regardless, the courts in Cantú and Farah explicitly referenced and evaluated the Abassi factors, see Cantú, 933 F.3d at 423; Farah, 926 F.3d at 498-99.

Additionally, Dalal relies upon Lanuza v. Love, 899 F.3d 1019 (9th Cir. 2019) and Jacobs v. Alam, 915 F.3d 1028 (6th Cir. 2019), cases in which courts have held that malicious prosecution and fabrication of evidence claims remain viable post-Abassi.  Dalal's reliance on these cases is misguided.  First, the court in Lanuza recognized that "[t]he conclusion that Lanuza's case arises in a context meaningfully different [than Bivens] is ineluctable," but nonetheless held that special factors do not counsel hesitation.  899 F.3d at 1028-34.  As discussed below, special factors counsel hesitation here.  Second, Jacobs presented facts much more similar to Bivens than those presented here: in both instances, plaintiffs were arrested in their homes without warrants.  915 F.3d at 1033-34.

1983 and the NJCRA because they are not state actors.  Second, the Federal Defendants argue that, at the very least, the claims against Defendant Welle should be dismissed because he is absolutely immune from suit as a prosecutor.  Third, the Federal Defendants contend they are entitled to qualified immunity because Dalal has failed to state a claim for malicious prosecution, fabrication of evidence, and civil conspiracy.  The Court disagrees and will address each of these arguments in turn.

### 1. Plaintiff May Bring Suit Against the Federal Defendants Under Section 1983 & the NJCRA.

The Federal Defendants argue that Dalal's claims brought pursuant to Section 1983 and the NJCRA should be dismissed because Dalal cannot sue the Federal Defendants under Section 1983.[6]  The Court disagrees.

"Section 1983 creates a cause of action against '[e]very person who, under the color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution.'"  Hindes v. F.D.I.C., 137 F.3d 148, 158 (3d Cir. 1998) (quoting 42 U.S.C. § 1983).  Generally, "[b]ecause section 1983 provides a remedy for violations of federal law by persons acting pursuant to state law, federal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law."  Id.

That said, it is well established "that federal officials are subject to section 1983 liability when sued in their official capacity where they have acted under the color of state law, for example in conspiracy with state officials."  Id. (citing Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990),

---

[6] The NCJRA is "intended to provide New Jersey citizens with a state analogue to Section [ ] 1983 actions."  Surina v. S. River Bd. of Educ., No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018).  For this reason, the Court's analysis regarding Section 1983 applies with equal force to Dalal's claims under the NJCRA (Counts VII, XI, and XIV).

aff'd on other grounds, 502 U.S. 21 (1991)); see also Dennis v. Sparks, 449 U.S. 24, 27 (1980)

("[T]o act 'under the color of' state law for § 1983 purposes does not require that the defendant be

an officer of the State.").  In order to adequately allege a conspiracy between federal and state

actors, "a plaintiff must allege facts that support the existence of the elements of conspiracy:

agreement and concerted action."  White v. Hinds, No. 13-7441, 2015 WL 2745216, at *3 n.5

(D.N.J. June 15, 2015).  Such allegations must be specific and must address, for example, "the

time the agreement was made, the period of the conspiracy, the exact parties to the agreement, and

the object of the conspiracy."  Id. (internal quotation marks and citations omitted); see also

DeAngelo v. Brady, 185 F. App'x 173, 175 (3d Cir. 2006) ("It is a longstanding rule in the Third

Circuit that a mere general allegation . . . or averment or conspiracy or collusion without alleging

the facts which constitute such conspiracy or collusion is a conclusion of law and is insufficient

[to state a claim].") (quoting Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

     Here, Dalal adequately alleges that the Federal Defendants conspired with the State

Defendants to violate his constitutional rights.  For example, the Amended Complaint alleges that

(1) "[t]he [State] Defendants, Federal Defendants, and [the presiding judge] agreed that Plaintiff's

bail would be set at an extraordinarily high amount to ensure that he would not be released on

bail," Am. Compl. ¶ 25; (2) "[w]hile the bail issues were being litigated . . . the [State] Defendants

and Federal Defendants determined that they would fabricate additional criminal charges against

Plaintiff for the purpose of preventing his release on bail," id. ¶ 61; (3) "[o]n June 27, 2012, the

Federal Defendant and the [State] Defendants agreed that, despite their lack of any evidence, they

would fabricate first-degree charges of conspiracy to commit the murder of Martin Delaney against

Plaintiff to prevent his release from pretrial detention," id. ¶ 90; (4) "[o]n the morning of June 27,

2012, the Federal Defendants and the [State] Defendants agreed that [Bergen County Prosecutors]

Molinelli, Higgins, and Delaney would advise [Bergen County Detectives] Anzilotti and Costello to fabricate the claim that [FBI informant W.S.] had alleged that Plaintiff had threatened Delaney and conceal the fact that their attempt to entrap Plaintiff had failed," id. ¶ 91; and (5) "[t]he [State] Defendants and the Federal Defendants agreed that no grand jury indictment would be brought [for the second set of charges] until [FBI informant W.S.] was removed from the United States" in order to ensure that he would not be present to testify before the grand jury, id. ¶¶ 108-09.  These alleged conspiratorial acts are certainly more than "bare allegations of an agreement," Lewis v. Roberts, No. 18-10135, 2019 WL 2076246, at *2 (D.N.J. May 9, 2019), as Dalal specifically addresses when the allegedly conspiratorial agreements were made, the exact parties to the agreements, the objective of the agreements, and the motive behind the agreements.  Such allegations are adequate to survive a motion to dismiss.

## 2. Prosecutorial Immunity Does Not Otherwise Bar Plaintiff's Claims Against Defendant Welle.

In the alternative, the Federal Defendants argue that former AUSA Defendant Welle has absolute prosecutorial immunity for his actions taken in the alleged scheme to violate Dalal's constitutional rights.  The Court disagrees.

Prosecutors have absolute immunity for work "intimately associated with the judicial phase of the criminal process," Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)), such as "claims arising from their conduct in beginning a prosecution, . . . presenting a state's case at trial, and appearing before a judge to present evidence," id. (internal citations omitted).  "By contrast,  a prosecutor's 'investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'"  Id. (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)).

13

Here, Dalal alleges that Welle and the other Federal Defendants planted an FBI informant at Bergen County Jail to elicit incriminating statements from Dalal in order to bring further state charges against Dalal, and that when the Defendants failed to obtain such incriminating statements, they decided to fabricate evidence in order to bring the state charges nonetheless.  See Am. Compl. ¶¶ 27, 61.  In short, all allegations against Welle relate to the state law charges against Dalal, over which Welle lacked jurisdiction to prosecute.  For this reason, it cannot be said that Welle was acting in his role as a federal prosecutor, and he is thus not entitled to immunity.

### 3.  Plaintiff has Adequately Stated a Claim for Malicious Prosecution, Fabrication of Evidence, & Civil Conspiracy.

The Federal Defendants also argue they are entitled to qualified immunity because Plaintiff has failed to state a claim for malicious prosecution, fabrication of evidence, and civil conspiracy under Section 1983 and NJCRA.  Again, the Court disagrees.

### a.  Malicious Prosecution

To state a claim for malicious prosecution under Section 1983, a plaintiff must establish that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014) (internal quotation marks and citation omitted).  The Federal Defendants argue that Dalal has failed to state a claim for malicious prosecution against the Federal Defendants for three reasons.  The Court will address each argument in turn.

14

First, the Federal Defendants argue that they did not initiate a criminal proceeding against Dalal. A claim for malicious prosecution may be brought against a defendant who influences or participates in a decision to institute a criminal proceeding even though they did not make the final decision to initiate the criminal proceeding. Ekwunife v. City of Phila., 756 F. App'x 165, 169 (3d Cir. 2018). Dalal alleges that the Federal Defendants participated in the decision to institute a criminal proceeding by, together with the State Defendants, devising a scheme to fabricate the charges associated with the conspiracy to murder Delaney. Am. Compl. ¶ 90. Moreover, Dalal contends that the Federal Defendants played an integral role in this alleged scheme by transferring a known FBI informant to Bergen County Jail in an effort to entrap Dalal, and, when that effort failed, agreeing these charges should nonetheless be fabricated. Id. ¶¶ 63, 68, 90.

According to the Federal Defendants, this level of involvement is not enough, as they were not involved "in the preparation of the warrant application or in subsequent grand jury proceedings," and thus had no "direct participation in the state prosecution." Fed. Def. Mem. at 22. Yet, all that is required of the Federal Defendants is that they "advised or assisted another person to begin the proceeding." Grendysa v. Evesham Twp. Bd. of Educ., No. 02-1493, 2005 WL 2416983, at *15 (D.N.J. Sept. 27, 2005). At this stage, based on the pleading, Dalal adequately alleges that the Federal Defendants assisted the State Defendants in bringing fabricated charges against Dalal. See Epperson v. Wal-Mart Stores, Inc., 373 N.J. Super. 522, 530-31 (App. Div. 2004) (rejecting argument that defendant did not initiate a criminal proceeding because they did not sign the criminal complaint).

Second, the Federal Defendants argue that the Amended Complaint fails to establish favorable termination. This is a much closer call. "[A] prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable

termination." Morris v. Veniero, 453 F. App'x 243, 245 (3d Cir. 2011) (quoting Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009)).  One such indication of innocence is "the formal abandonment of the proceedings by the public prosecutor." Kossler, 564 F.3d at 187 (quoting Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002)).  The Federal Defendants argue the State Defendants' decision to abandon the charges against Dalal in the Second Indictment is not indicative of Dalal's innocence because the State Defendants gave no reason for why they decided to drop the charges. See Kapusinski Decl. Ex. D (Motion and Order of Dismissal).  The Federal Defendants are correct that a mere dismissal of charges is not, in and of itself, an indication of innocence. See DiFronzo v. Chiovero, 406 F. App'x 605, 609 (3d Cir. 2011).  That said, when a dismissal order provides no indication of innocence on its face, the Third Circuit has commanded district courts to "conduct a fact-based inquiry" and "to look beyond the four corners of the [dismissal] order" to determine the circumstances prompting such dismissal. Geness v. Cox, 902 F.3d 344, 356 (3d Cir. 2018) (internal quotation marks and citation omitted).

Here, there is a dispute of fact regarding the circumstances prompting dismissal of the charges brought in the Second Indictment against Dalal.  The Federal Defendants claim that the timeline of events—whereby the State Defendants dismissed the charges in the Second Indictment only after a jury convicted Dalal on the charges in the First Indictment related to the synagogue attacks—indicate that the State Defendants "chose not to go to trial on the conspiracy charges because Dalal already faced a minimum of three decades in prison, and a second jury trial against a person already going to prison for such a lengthy term would not serve public interest." Fed. Def. Mem. at 23.  That said, Dalal alleges that many of the actions taken by the Defendants leading up to dismissal of the charges in the Second Indictment are indicative of innocence: namely that they were unable to obtain incriminating information from the FBI informant, Am. Compl.

¶¶ 86-89, they delayed indictment until the informant was deported from the United States, allegedly in order to ensure that he could not be summoned to testify before the grand jury, id. ¶¶ 108-20, and that state prosecutors made several attempts to dismiss the case due to lack of evidence but that the State Defendants prevented them from doing so, id. ¶¶ 137-48.  The Court concludes that the State Defendants' motive for dismissing the charges in the Second Indictment is unclear; dismissing the malicious prosecution claim on this ground is thus premature.[7]

Third, the Federal Defendants argue that Dalal has not proven, and cannot prove, that the criminal proceedings were initiated without probable cause.  The Federal Defendants note that a grand jury's indictment "constitutes prima facie evidence of probable cause to prosecute."  Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989).  That said, a plaintiff can rebut this presumption by presenting evidence of "fraud, perjury or other corrupt means."  Id. (internal quotation marks omitted).  Here, Dalal alleges that the evidence presented to the grand jury was fabricated and that the witnesses made false statements to the grand jury.  Am. Compl. ¶¶ 114, 116.  For the purposes of a motion to dismiss, these allegations are sufficient to rebut this presumption.  Dalal's malicious prosecution claims under Section 1983 may thus proceed.

### b.  Fabrication of Evidence

Likewise, Dalal has sufficiently alleged fabrication of evidence.  "[A]n acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent the fabricated evidence, the defendant would not have been criminally charged."  Black v.

---

[7] The Court notes that in each case relied upon by the Federal Defendants, the court dismissed a malicious prosecution claim for failure to prove indication of innocence at the summary judgment stage.  See DiFronzo, 406 F. App'x 605; Donahue, 280 F.3d 371; Scutella v. Cousins, No. 17-222, 2019 WL 2085669 (W.D. Pa. May 13, 2019), aff'd 811 F. App'x 110 (3d Cir. 2020); Maleika v. City of Jersey City, No. 17-1959, 2018 WL 4522046 (D.N.J. Sept. 21, 2018). Dalal should likewise be given the opportunity to proceed to discovery and seek evidence regarding the State Defendants' motive for dismissing the charges in the Second Indictment.

Montgomery Cnty., 835 F.3d 358, 370 (3d Cir. 2016).  "The 'reasonable likelihood' standard we employ simply requires that a plaintiff draw a 'meaningful connection' between her particular due process injury and the use of fabricated evidence against her."  Id. at 372.  Here, Dalal contends that the Federal and State Defendants fabricated claims that Dalal conspired to murder Delaney after they were unsuccessful in obtaining statements from the FBI informant.  Am. Compl. ¶¶ 91, 96-97.  Taking the facts alleged in the Amended Complaint as true, there is a reasonable likelihood that Dalal would not have been criminally charged absent this evidence.  Dalal's fabrication of evidence claims under Section 1983 and NJCRA may thus proceed.

### c.  Civil Conspiracy

Finally, Dalal has adequately stated a claim for civil conspiracy under Section 1983 and the NJCRA.  "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970)).[8]  As explained supra, Section B.1, (a) the Federal Defendants were acting under the color of state law, and (b) Dalal has alleged specific facts indicative of a conspiracy to violate his constitutional due process rights by bringing allegedly fabricated charges against him and maliciously prosecuting him.  See Am. Compl. ¶¶ 25, 61, 90-91, 108-09.  The conspiracy claims may thus proceed.[9]

---

[8] "Under New Jersey law, the elements of a claim of conspiracy to violate civil rights are essentially the same." Jutrowski, 904 F.3d at 294 n.15 (citing Banco Popular N.A. v. Gandi, 184 N.J. 161, 177-78 (2005)).

[9] In a footnote, the Federal Defendants state that "[e]ven if the Court were to find that the Amended Complaint could state a claim for relief, the Federal Defendants would still be entitled to qualified immunity, because it was not clearly established, at the time of the events in the complaint, that the allegations in the complaint would violate the Constitution."  Fed. Def. Mem. at 27 n.10.  The Court disagrees, as an individual clearly has a right to be free from prosecution without probable cause and fabrication of evidence.  See Harmon v. City of Camden, No. 08-5074, 2010 WL 4609417, at*3 (D.N.J. Nov. 4, 2010) ("[I]f the police used excessive force to arrest Plaintiff without probable cause and then maliciously prosecute him, qualified immunity will not protect Defendants as these are clearly

### C.        Common Law Tort Law Claims

The Amended Complaint alleges two counts—malicious prosecution (Count IV) and conspiracy to violate civil rights in connection with the alleged malicious prosecution (Count VIII)—under a common law tort theory.  Am. Compl. ¶¶ 162-64, 177-79.  The Federal Defendants argue that the Court lacks jurisdiction over these tort claims because the United States is immune from suit.[10]  Although the Court agrees that the Court lacks jurisdiction over the tort claims based on actions taken by former AUSA Defendant Welle, the United States has waived immunity as to the tort claims regarding the FBI Defendants' alleged misconduct.

As a sovereign, the United States is immune from suit.  United States. v. Mitchell, 445 U.S. 535, 538 (1980).  That said, the United States has waived its sovereign immunity in prescribed circumstances in accordance with the Federal Tort Claims Act ("FTCA").  See Santos v. United States, 559 F.3d 189, 193 (3d Cir. 2009).  Under the FTCA, the United States has specifically reserved its sovereign immunity in several situations, two of which are at issue for the purposes of this Motion.

First, the United States has not waived its sovereign immunity for intentional torts, including malicious prosecution, unless such claim arises out of "acts or omissions of investigative

---

established rights."); Halsey, 750 F.3d at  292 ("To the best of our knowledge, every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative.").  The Court thus declines to extend qualified immunity to the Federal Defendants.

[10] Tort actions cannot typically be brought against federal actors acting with the scope of their federal employment. See, e.g., CAN v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008); Murchison v. Warden Lewisburg USP, 566 F. App'x 147, 150 (3d Cir. 2014).  The Federal Defendants argue that all tort claims against them should be dismissed for this reason and the Court agrees.  In the Notice of Removal, however, the United States appears to have substituted itself as a party defendant in order to remove the case to federal court as an action brought against the United States. See Notice of Removal of Civil Action ¶¶ 11-15, ECF No. 1 (citing 28 U.S.C. § 2679(d)(2), which "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment," allows the United States to "be substituted as the party defendant" and remove the case from state to federal court).  The Court thus dismisses the tort claims against the Federal Defendants and grants the request to substitute the United States as a defendant with respect to these claims.

or law enforcement officers of the United States Government."   28 U.S.C. § 2680(h). "Investigative or law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."  Id.  In accordance with this provision, the Court lacks jurisdiction over the tort claims to the extent they are based on Welle's conduct, because as a former AUSA, Welle is not an investigative or law enforcement officer.  See, e.g., Aronson v. United States, 595 F. Supp. 178, 180 (E.D. Pa. 1984) ("The government attorneys are not empowered to execute searches, seize evidence and make arrests within the meaning of the provision allowing suits for designated intentional torts against such agents."); Karkalas, 2019 WL 3492232, at *21 ("Attorney Marks, as a prosecutor, is not an 'investigative or law enforcement officer' under the [FTCA].").[11]

Second, the United States has not waived sovereign immunity for alleged tortious action based upon the exercise of discretionary functions or duties.   28 U.S.C. § 2680(a) (the "discretionary-function exception").  Courts have nearly unanimously held that federal actors lack discretion to violate an individual's constitutional rights.  See, e.g., U.S. Fidelity & Guaranty Co. v. United States, 837 F.2d 116, 120 (3d Cir. 1988) ("[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation."); Loumiet v. United States, 828 F.3d 935, 943 (D.C. Cir. 2016) (holding that "the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a

---

[11] Likewise, Dalal's conspiracy to violate civil rights claim brought under tort common law cannot survive as to Welle's conduct, because it "rests upon an underlying tort for which the United States has not waived its sovereign immunity [under 28 U.S.C. § 2860(h).]").  Daisley v. Riggs Bank, N.A., 372 F. Supp. 2d 61, 78 (D.D.C. 2005).

constitutional prescription," and summarizing First, Second, Third, Fourth, Fifth, Eighth, and Ninth Circuit case law, which held the same).[12]

The Federal Defendants argue that the discretionary-function exception bars Dalal's claims against FBI and former FBI Defendants Coleman, David, Jerussi, and Spence because they were merely investigating criminal conduct and were thus acting in a discretionary capacity.  See Gonzalez v. United States, 814 F.3d 1022, 1028 (9th Cir. 2016) ("[T]he FBI has discretion in its investigative decisions. . . .  We know of no statute or regulation—and Gonzalez has not directed us to any—that prescribes a course of action for the FBI and its agents to follow in the investigation of crime.").  This argument ignores the fact that Dalal contends that the Federal Defendants' allegedly tortious conduct resulted in constitutional violations.  See Am. Compl. ¶ 152 (alleging Fourth Amendment violations in connection with the alleged malicious prosecution).  Because the Court holds that Dalal has adequately alleged a claim for malicious prosecution under Section 1983, see supra III(B)(3), it follows that the FTCA does not provide "a blanket immunity" for Coleman, David, Jerussi, and Spence.  See Loumiet, 828 F.3d at 943.  The Court thus concludes that it has jurisdiction to consider Dalal's claims of alleged tortious conduct (Counts IV and VII) as they relate to the actions of Coleman, David, Jerussi, and Spence.

## IV.   CONCLUSION

---

[12] Notably, the Federal Defendants do not address this weight of authority or attempt to distinguish these cases. Instead, they cite to three Eastern District of Pennsylvania cases which declined to follow Third Circuit precedent in concluding that the discretionary-function exception applies even when the plaintiff adequately alleges a constitutional violation. See Fed. Def. Reply at 8, ECF No. 53 (citing Karkalas, 2019 WL 3492232, at *22; Barbieri v. United States, No. 16-3748, 2017 WL 4310255, at *5 (E.D. Pa. Sept. 28, 2017); and Lozada v. United States, No. 07-4740, 2008 WL 2152051, at *4 (E.D. Pa. May 21, 2008)).  In reaching such a conclusion, these cases rely F.D.I.C. v. Meyer, where the Supreme Court held that a constitutional tort is not a cognizable claim under the FTCA. 510 U.S. 471, 478 (1994).  These cases misconstrue the reach of Meyer, however.  The fact that a constitutional tort is not a cognizable claim does not mean that a plaintiff cannot bring a state tort law claim against the federal government based on identified constitutional defects.  See Loumiet, 828 F.3d at 945-46 ("A plaintiff who identifies constitutional defects in the conduct underlying her FTCA tort claim—whether or not she advances a Bivens claim against the individual official involved—may affect the availability of the discretionary-function defense, but she does not thereby convert an FTCA claim into a constitutional damages claim against the government; state law is necessarily still the source of the substantive standard of FTCA liability.").

For the reasons stated above, the Federal Defendant's Motion to Dismiss, ECF No. 30, is **GRANTED in part and DENIED in part**. Counts II, VI, X, and XIII of the Amended Complaint, are **DISMISSED WITH PREJUDICE** for failure to state a claim pursuant to Rule 12(b)(6). Counts IV and VIII are **DISMISSED WITH PREJUDICE** as they relate to conduct by former AUSA Defendant Welle for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Date: March 30, 2021

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**