<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **AAKASH DALAL,**<br><br>     ***Plaintiff,***<br><br>**v.**<br><br>**JOHN L. MOLINELLI, et al.,**<br><br>     ***Defendants.*** | **Civil Action No. 20-1434**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendants former Bergen County Prosecutor John L. Molinelli's ("Molinelli"), former Bergen County Assistant Prosecutor John L. Higgins' ("Higgins"), Bergen County Assistant Prosecutor Martin Delaney's ("Delaney," and together with Molinelli and Higgins, the "BCPO Defendants"), Bergen County Chief of Detectives Robert Anzilotti's ("Anzilotti"), and Bergen County Detective Sergeant James Costello's ("Costello," and together with the BCPO Defendants and Anzilotti, the "State Defendants") Motion to Dismiss pursuant to Federal Rule of Civil procedure 12(b)(6), ECF No. 31. Pro se Plaintiff Aakash Dalal ("Plaintiff" or "Dalal") opposes the Motion. ECF No. 40. For the reasons set forth below, the Motion is **GRANTED in part and DENIED in part**.

I.     **BACKGROUND**[1]

This action arises out of an alleged conspiracy between the State Defendants and a number of federal actors (collectively the "Federal Defendants") to manufacture criminal charges against Plaintiff in order to prevent his release on bail while he awaited trial on a separate indictment stemming from Plaintiff's involvement in a series of attacks on synagogues and a Jewish community center.  See generally Am. Compl.  Plaintiff asserts claims for malicious prosecution, fabrication of evidence, and civil conspiracy under several statutory and common law theories. See id.

In February and March of 2012, Dalal was charged by complaint in connection with a series of incidents where Dalal and a co-defendant attacked four synagogues and a Jewish community center in Bergen County.  See State v. Dalal, 221 N.J. 601, 603 (2015) ("Dalal II"); Am. Compl. ¶¶ 18, 24.  On March 1, 2013, a Bergen County grand jury returned an indictment charging Dalal with several crimes associated with these attacks (the "First Indictment").  See State v. Dalal, 438 N.J. Super. 156, 159-60 (App. Div. 2014) ("Dalal I").[2]  On November 11, 2016, a jury found Dalal guilty of terrorism, arson, bias intimidation, and conspiracy to commit arson, with the most serious charges carrying a mandatory minimum sentence of 30 years.  See Declaration of Frank P. Kapusinski ("Kapusinski Decl.") Ex. A, ECF No. 10.1; N.J.S.A. § 2C:38-2(b)(1).  On July 28, 2017, Dalal was sentenced to 35 years in prison.  Id.

---

[1] The Court has addressed the facts of this case at length in its Opinion partially granting the Federal Defendants' Motion to Dismiss, ECF No. 30.  The Court assumes the parties' knowledge with the facts and elaborates on those allegations against the State Defendants here.

The facts are drawn from the Amended Complaint, ECF No. 15, as well as court decisions and other matters of public record.  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

[2] Dalal I was reversed by Dalal II, but the facts articulated in both opinions remain relevant for the purposes of this Opinion.

On July 27, 2012, the State Defendants brought additional charges against Dalal, alleging that he conspired to murder Prosecutor Delaney, conspired to possess a firearm, and made terroristic threats.  Dalal II, 221 N.J. at 604; Am. Compl. ¶ 97.  Dalal contends these charges are false.  Am. Compl. ¶¶ 101-03.  Instead, according to Dalal, the Defendants all agreed to fabricate these charges in order to prevent his impending release from jail on bail pending trial for the First Indictment.  Id. ¶ 104.  They did this in part by agreeing that Detectives Anzilotti and Costello would lie, under oath, to the presiding judge in order to obtain a warrant to arrest Dalal on the charges, which they did on June 27, 2012. Id. ¶¶ 99-100.  Ultimately, on August 7, 2013, a Bergen County grand jury returned an indictment charging Dalal with conspiracy to murder Delaney, conspiracy to possess an assault firearm, and threatening to commit the murder of Delaney (the "Second Indictment").  Kapusinski Decl. Ex. C; Am. Compl. ¶ 120.  Dalal alleges that Costello, the only witness to appear before the grand jury, repeatedly made false statements and presented fabricated evidence in order to obtain the indictment.  Am. Compl. ¶ 114.

According to Plaintiff, Brian Sinclair ("Sinclair"), the Bergen County Prosecutor assigned to the case, knew that there was not sufficient evidence to proceed to trial, but Prosecutors Higgins and Delaney continuously pressured him to prosecute.  Am. Compl. ¶¶ 139-40, 142, 144-45.  Eventually, in late May 2017, Higgins was "demoted" and replaced as First Assistant Prosecutor.  Id. ¶ 146.  Shortly thereafter, on July 26, 2017—two days before Dalal was sentenced for the charges involving the synagogue attacks under the First Indictment—a Bergen County judge granted the Bergen County Prosecutor's Office's ("BCPO") motion to dismiss the charges brought in the Second Indictment.  Kapusinski Decl. Ex. D.

On July 22, 2019, Dalal brought this action in New Jersey Superior Court.  See ECF No. 1.  On February 12, 2020, the Federal Defendants removed the action to this Court pursuant to 28

U.S.C. §§ 1442(a)(1) and 2679(d).  Id.  On June 11, 2020, Dalal filed the Amended Complaint. ECF No. 15.  The Amended Complaint alleges malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights against the State Defendants related to the charges brought on June 27, 2012.  For each of these allegations, Dalal brings claims under (a) 42 U.S.C. § 1983 ("Section 1983"), (b) the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 et seq. ("NJCRA"), and/or (c) common law.  Dalal seeks injunctive relief against the State Defendants as well as compensatory, punitive, and nominal damages.  Am. Compl. at 34.

On July 31, 2020, the State Defendants filed the instant Motion, arguing that (1) the State Defendants are not "persons" within the meaning of Section 1983; (2) Dalal's initial complaint was not filed within the statute of limitations; (3) the State Defendants are entitled to immunity; and (4) the Amended Complaint fails to state a claim for civil conspiracy.  ECF No. 31.  Dalal opposes the Motion.  ECF No. 40.

## II. LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Because Plaintiff is proceeding pro se, the Court must liberally construe the Amended Complaint under "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). "Yet there are limits to [the Court's] procedural flexibility," and "pro se litigants must still allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

## III.   DISCUSSION[3]

### A.   Absolute Prosecutorial Immunity for Prosecutors Molinelli, Higgins, and Delaney

The State Defendants argue that all counts against the BCPO Defendants—Molinelli, Higgins, and Delaney—should be dismissed because they are entitled to absolute prosecutorial immunity. The Court agrees that, as prosecutors, the BPCO Defendants are entitled to absolute immunity for Dalal's claims under Section 1983 and the NJCRA[4] (Counts I, III, V, VII, IX, XI,

---

[3] The Court rejects several of the State Defendants' arguments out of hand. First, contrary to what the State Defendants argue, the State Defendants are considered "persons" within the meaning of Section 1983, as Dalal brings this action against them in their individual capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991).

Second, Dalal's claims are not barred by the statute of limitations. Section 1983 claims are governed by the statute of limitations applicable to personal-injury claims in the state wherein the alleged injury occurred, here New Jersey. Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010); see also Rose v. Bartle, 871 F.2d 331, 347 n.13 (3d Cir. 1989) (explaining that the "most appropriate state statute of limitations" applies to all Section 1983 claims). A two-year statute of limitations applies to personal-injury torts in New Jersey. Dique, 603 F.3d at 185 (citing N.J.S.A. § 2A:14-2). For both malicious prosecution and fabrication of evidence claims, the statute of limitations begins to run when the underlying criminal proceeding is allegedly terminated in plaintiff's favor. See Rose, 871 F.2d at 348-50; McDonough v. Smith, 139 S. Ct. 1249, 1254-55 (2019). Dalal alleges that the charges in the second indictment were dismissed on July 26, 2017, Am. Compl. ¶ 148, and his initial complaint was filed in New Jersey Superior Court on July 22, 2019, within the two-year statute of limitations, ECF No. 1. His claims are thus timely.

Third, the Court declines to stay the proceeding due to the pending appeal in the state criminal case regarding the First Indictment. Dalal's claims here all surround the charges brought in the Second Indictment. The issues are separate and staying this case would thus be inappropriate.

[4] This Court has consistently applied absolute prosecutorial immunity identically under Section 1983 and NJCRA. See Richardson v. New Jersey, No. 16-135, 2019 WL 6130870, at *7 (D.N.J. Nov. 18, 2019) (summarizing cases).

XII, and XIV), but concludes that they are not entitled to immunity as to the common law malicious prosecution claim (Count IV).

A prosecutor is entitled "to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" Fogle v. Sokol, 957 F.3d 148, 159 (3d Cir. 2020) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). For example, prosecutors are immune from "claims arising from their conduct in beginning a prosecution, . . . presenting a state's case at trial, and appearing before a judge to present evidence." Id. (internal citations omitted). "By contrast, a prosecutor's 'investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.'" Id. (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)); see also Buckley, 509 U.S. at 273 ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand.").

The Third Circuit has emphasized that a court's prosecutorial immunity analysis should "focus[ ] on the unique facts of each case and requires careful dissection of the prosecutor's actions." Odd v. Malone, 538 F.3d 202, 210 (3d Cir. 2008); see id. ("We have rejected bright-line rules that would treat the timing of the prosecutor's actions (e.g. pre- or postindictment), or its location (i.e. in- or out-of-court), as dispositive."). Ultimately, the prosecutor "bears the heavy burden of establishing entitlement to absolute immunity." Id. at 207 (internal quotation marks and citation omitted).

1.      **The BCPO Defendants are Entitled to Absolute Immunity as to the malicious prosecution and associated conspiracy claims Under Section 1983 and NJCRA (Counts I, III, V, and VII).**

The BCPO Defendants are entitled to absolute immunity as to the malicious prosecution and associated conspiracy claims brought under Section 1983 and NJCRA.  The Amended Complaint alleges that the State Defendants "knowingly and intentionally . . . deprived Plaintiff of his rights guaranteed by the Fourth Amendment to the United States Constitution by initiating and/or assisting in and facilitating the initiation of criminal charges against Plaintiff without probable cause and with malice."  Am. Compl. ¶ 152; see also id. ¶¶ 159, 167, 174.  The basis of these claims, therefore, is the initiation of the criminal charges, first by way of criminal complaint then by way of indictment, allegedly without probable cause.  The decision to prosecute falls squarely within the ambit of prosecutorial immunity, and the BCPO Defendants are thus entitled to prosecutorial immunity for any alleged wrongdoing associated with that decision.  See Imbler, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."); see also Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role. . . .  A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred.").

2.      **The BCPO Defendants are Entitled to Absolute Immunity for the fabrication of evidence and associated conspiracy claims Under Section 1983 and NJCRA (Counts IX, XI, XII, and XIV).**

Likewise, the BCPO Defendants are entitled to absolute immunity for the fabrication of evidence and associated conspiracy charges.  Dalal alleges that the BCPO Defendants pressured and advised Detectives Anzilotti and Costello to fabricate evidence before the presiding judge in support of false charges to ensure that Dalal would not be released on bail.  Am. Compl. ¶¶ 61,

99-100, 104.[5]  Dalal argues that the BCPO Defendants were working in their investigative rather than prosecutorial capacity when they allegedly pressured Anzilotti and Costello; the Court disagrees.

Prosecutors are entitled to absolute immunity for "their conduct in beginning a prosecution," Fogle, 957 F.3d at 160, but when exactly prosecution begins is a fact-intensive inquiry, Odd, 538 F.3d at 210.  In considering whether a prosecutor is entitled to absolute immunity for allegedly fabricating evidence, courts consider the timing of when the alleged fabrication occurred.  For example, in Buckley, the Supreme Court declined to extend absolute immunity to prosecutors who allegedly fabricated evidence during the early stages of law enforcement's investigation of a crime and more than ten months before the criminal defendant was arrested for the crime.  509 U.S. at 275.[6]  Similarly, in Kulwicki, the Third Circuit declined to extend absolute immunity to a prosecutor who allegedly fabricated evidence after he was no longer assigned to the case, but recognized that "[u]nquestionably" a prosecutor who submits false evidence to the court would be entitled to absolute immunity for such an action if he did so while prosecuting the case. 969 F.2d at 1467.

Here, several key facts lead the Court to conclude that the BCPO Defendants were acting within their prosecutorial capacity when they allegedly advised Anzilotti and Costello to fabricate evidence.  Unlike in Buckley, criminal charges were brought against Dalal on June 27, 2012, the

---

[5] In the Opposition Brief, Dalal is very clear that these allegations, and only these allegations, form the basis of his claims.  See Pl. Opp. Br. at 5 ("To make it clear, Defendants Molinelli, Higgins, and Delaney are being sued for directing, advising, and inducing Defendants detectives Anzilotti and Costello to fabricate criminal charges against Plaintiff by illegally obtaining arrest warrants.") (emphasis omitted).

[6] The Court rejects Dalal's contention that Buckley "explicitly forecloses any claim by prosecutors to absolute immunity for fabricating evidence." Pl. Opp. Br. at 11.  In Buckley, the Supreme Court considered the fact that the alleged fabrication of evidence occurred well before a grand jury was empaneled and the criminal defendant was arrested to conclude "that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime [is not] immune from liability."  509 U.S. at 275.  The Court did not hold that prosecutors are never entitled to absolute immunity for fabrication of evidence claims.

very same day that Anzilotti and Costello allegedly fabricated evidence.  Am. Compl. ¶¶ 99-101; Dalal II, 221 N.J. at 604.  More importantly, Dalal asserts that the BPCO Defendants had already decided to prosecute Dalal for those charges prior to the alleged fabrication.  Am. Compl. ¶¶ 61, 90-91, 97.[7]  Such facts make it clear that when the BCPO Defendants allegedly advised Anzilotti and Costello to fabricate evidence against Dalal, they had made the decision to prosecute and were "preparing for the initiation of judicial proceedings."  Buckley, 509 U.S. at 273.  The BCPO Defendants are entitled to immunity for this conduct.

Citing several cases, Dalal contends that courts routinely deny absolute prosecutorial immunity "where prosecutors have similarly advised and directed police to engage in conduct that resulted in the issuance of warrants."  Pl. Opp. Br. at 9.  These cases are all inapposite, as in each, the prosecutor was advising the police during the police's early investigation of the crime or in determining whether there was probable cause to charge prior to deciding to prosecute.  For example, in Burns v. Reed, the Supreme Court held that a prosecutor was not entitled to absolute immunity for giving advice to police regarding the constitutionality of certain interviewing technique when interviewing a suspect.  500 U.S. 478, 482 (1991).  The Court went on to conclude, however, that the prosecutor was entitled to absolute immunity for eliciting false statements from witnesses in a probable cause hearing in an effort to obtain a search warrant.  Id. at 490.  There is no meaningful distinction between a prosecutor eliciting false statements in an effort to obtain a warrant, as in Burns, and a prosecutor pressuring or advising a witness to testify falsely in an effort to obtain a warrant, as Dalal alleges now.  Cf. Ewing v. City of Stockton, 588 F.3d 1218, 1234-35 (9th Cir. 2009) (concluding that a prosecutor who advised a police officer that he had probable

---

[7] Moreover, as explained supra, Dalal cannot challenge the decision to bring the second set of charges against him, as a prosecutor is absolutely immune for his decision to initiate a prosecution, "even where he acts without a good faith belief that any wrongdoing has occurred."  Kulwicki, 969 F.2d at 1464.

cause to bring additional charges was not entitled to absolute immunity, but noting that a prosecutor was entitled to absolute immunity for similar actions taken "after a decision to seek an indictment has been made") (quoting Buckley, 509 U.S. at 273).

Here, Dalal does not allege that the BCPO Defendants were advising Detectives Anzilotti and Costello during the course of their investigation or regarding whether there was probable cause. Instead, Dalal contends that the BCPO Defendants pressured Anzilotti and Costello to fabricate evidence in order to simultaneously testify in support of filing false charges against Dalal after the BCPO Defendants had already made the decision to bring these charges. Am. Compl. ¶¶ 61, 90-91, 97. Because "the arrest of a criminal defendant and the filing of charges are at the core of the prosecutorial function," Munchinski v. Solomon, 618 F. App'x 666, 669 (3d Cir. 2012), the BCPO Defendants are entitled to absolute immunity for the fabrication of evidence claims.[8]

### 3. The BCPO Defendants are Not Entitled to Absolute Immunity for the Common Law Malicious Prosecution (Count IV).

That said, the BCPO Defendants are not entitled absolute immunity as to the common law malicious prosecution claim. "It is long established under New Jersey law that prosecutorial immunity is not absolute like its federal counterpart." Newsome v. City of Newark, No. 13-6234, 2014 WL 4798783, at *4 (D.N.J. Sept. 25, 2014) (citing Cashen v. Spann, 66 N.J. 541 (1975)).

---

[8] Dalal relies heavily upon Kalina v. Fletcher, 522 U.S. 118 (1997), which he claims stands for the proposition that prosecutors do not have absolute immunity when they falsify applications for arrest warrants. Kalina says no such thing. In Kalina, the Court merely held that a prosecutor was not entitled to immunity for statements made in a Washington State-specific requirement to commence a pleading—the "Certification for Determination of Probable Cause"—because such document could be submitted by anyone and thus the prosecutor was instead acting as a witness. Id. at 130-31. In fact, the Supreme Court explicitly held that it is "quite clear that [prosecutors'] activities in connection with the preparation and filing of . . . the information and the motion for an arrest warrant [ ] are protected by absolute immunity." Id. at 129. Moreover, the Court explained that it is of no matter that a police officer, acting within a similar capacity, would not be entitled to absolute immunity, as different concerns are present when a prosecutor is involved. Id. at 128.

Additionally, Dalal cites New Jersey Court Rules which he claims indicate that obtaining an arrest warrant is typically the role of detectives and police officers rather than prosecutors. As the Court explained supra, the timing here is such that the BCPO Defendants were already acting in a prosecutorial function when they allegedly advised Anzilotti and Costello to fabricate evidence. Which state actor typically obtains arrest warrants is of no matter.

The BCPO Defendants argue that the New Jersey Tort Claims Act ("NJTCA") provides absolute immunity, citing to N.J.S.A. 59:3-8, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."   However, the NJTCA provides no immunity where a public employee's conduct is "outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  N.J.S.A. § 59:3-14a.

Here, the Amended Complaint squarely alleges that the BCPO Defendants were acting fraudulently, Am. Compl. ¶ 163, which is outside the scope of their employment.  Moreover, the Amended Complaint plausibly alleges malice, as Dalal contends that the BCPO Defendants conspired to bring fabricated charges against Dalal to ensure that he was not released on bail.  See, e.g., id. ¶ 61. Therefore, because Dalal's common law malicious prosecution claim (Count IV) is premised upon the BCPO Defendants' malice, the BCPO Defendants may be held liable for these claims.  See Stolinski v. Pennypacker, No. 07-3174, 2008 WL 5136945, at *6 (D.N.J. Dec. 4, 2008).[9]

### B.    Qualified Immunity for Anzilotti and Costello

The State Defendants argue that Anzilotti and Costello are entitled to qualified immunity from Plaintiff's federal and state claims because they did not violate a clearly established law.[10] The Court disagrees.

---

[9] For similar reasons, the Court rejects the BCPO Defendants argument that they are entitled to qualified immunity on Count IV.  The NJTCA's qualified immunity provision, N.J.S.A. § 59:3-3, is also subject to the exceptions contained in N.J.S.A. § 59:3-14.  See Stolinski, 2008 WL 5136945, at *6.

[10] As an initial matter, the Court rejects the State Defendants' contention that Anzilotti and Costello are entitled to absolute immunity.  Facing a similar argument that police officers who seek arrest warrants should be entitled to absolute immunity, the Supreme Court held that a testifying witness, in any capacity, is not entitled to absolute immunity but, rather, is entitled to qualified immunity.  Malley v. Briggs, 475 U.S. 335, 340-41 (1986); see id. at 342 (explaining that it is of no matter that a prosecutor would be entitled to absolute immunity for similar actions).  The cases cited by State Defendants are all inapposite, as each addressed immunity for witnesses at criminal trials.  See, e.g., Rehberg v. Paulk, 566 U.S. 356, 367 (2012); Williams v. Hepting, 844 F.2d 138, 141 (3d Cir. 1998).

Qualified immunity is an affirmative defense that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).[11]   Once a government official invokes the defense of qualified immunity, the burden is on the plaintiff to plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011).   A right is "clearly established" if "the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law." <u>Kendra v. Schroeter</u>, 876 F.3d 424, 450 (3d Cir. 2017) (quoting <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 211 n.4 (3d Cir. 2001)).

Here, Dalal has sufficiently alleged that Detectives Anzilotti and Costello violated clearly established rights by providing fabricated evidence in support of criminal charges.   It is clearly established that an individual has a right not to be prosecuted without probable cause.   <u>See, e.g.</u>, <u>Lippay v. Christos</u>, 996 F.2d 1490, 1504 (3d Cir. 1993) ("If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established."). Similarly, the constitution clearly prohibits fabrication of evidence.   <u>See</u> <u>Halsey v. Pfeiffer</u>, 750 F.3d 292, (3d Cir. 2014) ("To the best of our knowledge, every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by

---

[11] Dalal argues that a qualified immunity defense is not available for the NJCRA claims.  The Court disagrees, finding that courts have consistently allowed state officials to rely upon the qualified immunity defense for NJCRA claims against them.  <u>See, e.g.</u>, <u>Brown v. State</u>, 230 N.J. 84 (2017); <u>Williams v. N.J. Div. of State Police</u>, No. 10-3478, 2012 WL 1900602, at *14-15 (D.N.J. May 24, 2012) ("The Court finds that the defense of qualified immunity is appropriate to claims arising under the NJCRA."); <u>Janowski v. City of N. Wildwood</u>, 259 F. Supp. 3d 113, 121 (D.N.J. 2017).

fabricating evidence to charge or convict the defendant has answered the question in the affirmative.").

The State Defendants make no attempt to rebut the case law.  Rather, they assert that because the grand jury returned an indictment, there is a presumption of probable cause, and that Plaintiff's conclusory allegations are not enough to rebut the presumption.  This Court disagrees.  Although a grand jury's indictment "constitutes prima facie evidence of probable cause to prosecute," a plaintiff can rebut this presumption by presenting evidence of "fraud, perjury or other corrupt means."  Id. (internal quotation marks).  Here, Dalal alleges that the evidence presented to the grand jury was fabricated and that the Detectives Anzilotti and Costello made false statements to the grand jury.  Am. Compl. ¶¶ 114, 116.  Plaintiff has sufficiently alleged a fact dispute on the issue of whether the arrest warrant and grand jury proceeding were obtained based on fabricated evidence.  At this juncture, dismissal is inappropriate.  For these reasons, the malicious prosecution and fabrication of evidence claims (Counts I, III, IV, IX, and XI) against Anzilotti and Costello may proceed.[12]

### C.    Failure to State a Claim for Civil Conspiracy

The State Defendants last argue that Dalal has failed to a state a claim for civil conspiracy against Anzilotti and Costello.  The Court disagrees.

To prevail on a conspiracy claim under § 1983 or the NJCRA, a plaintiff must prove that "persons acting under color of state law 'reached an understanding' to deprive him of his

---

[12] The State Defendants also argue that probable cause exists as a matter of law, relying upon the fact that a state court denied a motion to suppress in the criminal proceeding.  This fact is not dispositive at this stage of the proceeding.  The Amended Complaint does not appear to challenge any involvement Anzilotti and Costello may have had in obtaining that search warrant.  Instead, Dalal states that Anzilotti and Costello appeared before the presiding judge to obtain the arrest warrant that led to charges being brought against Dalal and in doing so made false statements and fabricated evidence.  Am. Compl. ¶¶ 99-100; see also ECF 40 Ex. 1 (arrest warrant issued on July 27, 2012).  Any overlap between Dalal's contentions and what New Jersey state courts have already determined regarding probable cause for a seemingly separate search warrant will be revealed during discovery.

constitutional rights."  Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-52 (1970)).[13]  Moreover, a plaintiff must identify an "overt act" taken in furtherance of a conspiracy which injures the plaintiff.  Id. at 294 n.15.

Here, Dalal adequately alleges that the State Defendants took several overt acts in further of the conspiracy and that those overt acts violate Dalal's constitutional rights.  For example, the Amended Complaint alleges that (1) "[t]he [State] Defendants, Federal Defendants, and [presiding judge] agreed that Plaintiff's bail would be set at an extraordinarily high amount to ensure that he would not be released on bail," Am. Compl. ¶ 25; (2) "[w]hile the bail issues were being litigated . . . the [State] Defendants and Federal Defendants determined that they would fabricate additional criminal charges against Plaintiff for the purpose of preventing his release on bail," id. ¶ 61; (3) "[o]n June 27, 2012, the Federal Defendants and the [State] Defendants agreed that, despite their lack of any evidence, they would fabricate first-degree charges of conspiracy to commit the murder of Martin Delaney against Plaintiff to prevent his release from pretrial detention," id. ¶ 90; (4) "[o]n the morning of June 27, 2012, the Federal Defendants and the [State] Defendants agreed that Molinelli, Higgins, and Delaney would advise Anzilotti and Costello to fabricate the claim that [FBI informant W.S.] had alleged that Plaintiff had threatened Delaney and conceal the fact that their attempt to entrap Plaintiff had failed," id. ¶ 91; and (5) "[t]he [State] Defendants and the Federal Defendants agreed that no grand jury indictment would be brought [for the second set of charges] until [FBI informant W.S.] was removed from the United States" in order to ensure that he would not be present to testify before the grand jury, id. ¶¶ 108-09.  Dalal has thus adequately

---

[13] "Under New Jersey law, the elements of a claim of conspiracy to violate civil rights are essentially the same." Jutrowski, 904 F.3d at 294 n.15 (citing Banco Popular N.A. v. Gandi, 184 N.J. 161, 177-78 (2005)).

alleged civil conspiracy in violation of Section 1983 and the NJCRA. Those claims (Counts V, VII, XII, and XIV) may thus proceed against Anzilotti and Costello.

**IV.   CONCLUSION**

For the reasons stated above, the State Defendant's Motion to Dismiss, ECF No. 31, is **GRANTED in part and DENIED in part**. Counts I, III, V, VII, IX, XII, and XIV are **DISMISSED WITH PREJUDICE** as to Defendants Molinelli, Delaney, and Higgins for failure to state a claim pursuant to Rule 12(b)(6).

Date: March 30, 2021

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**