UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AAKASH DALAL,<br><br>Plaintiff,<br><br>v.<br><br>JOHN L. MOLINELLI, *et al.*,<br><br>Defendants. | Civil Action No.<br><br>20-1434 (MCA) (LDW)<br><br>**OPINION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is *pro se* plaintiff Aakash Dalal's Motion for Leave to File a Second Amended Complaint. (ECF Nos. 116, 146). The United States, former Assistant United States Attorney L. Judson Welle, FBI Special Agents Corey Coleman, Ajit David, Tara Jerussi, and former FBI Special Agent James Spence (collectively, the "Federal Defendants") and former Bergen County Prosecutor John L. Molinelli, former Bergen County Assistant Prosecutor John Higgins, Bergen County Assistant Prosecutor Martin Delaney, Bergen County Chief of Detectives Robert Anzilotti, and Bergen County Detective Sergeant James Costello (collectively, the "State Defendants") oppose the motion. (ECF Nos. 132, 134). The motion is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions, and for the reasons set forth below, plaintiff's Motion to Amend is **DENIED**.

I. BACKGROUND

Plaintiff filed the initial complaint in New Jersey Superior Court, Law Division, Essex County on July 22, 2019. (ECF No. 1-1). Following removal of the action to federal court, several defendants moved to dismiss the initial complaint. In response, plaintiff filed an Amended

Complaint on June 11, 2020 alleging as follows. (ECF No. 15). On March 2, 2012, Dalal was arrested on various state criminal charges stemming from graffiti and fire-bomb attacks on synagogues in Bergen County. (Am. Compl. ¶¶ 18, 24). Following litigation, the New Jersey Appellate Division reduced Dalal's bail in the synagogue arson case to $1 million; his family posted bail in June 2012 and a bail source hearing was scheduled for June 27, 2012. (*Id.* ¶¶ 59, 69-70). In response, according to plaintiff, the State and Federal Defendants "determined that they would fabricate additional criminal charges against [Dalal] for the purpose of preventing his release on bail." (*Id.* ¶ 61). Specifically, plaintiff alleges that defendants directed FBI informant W.S. to approach Dalal in the Bergen County Jail and attempt to entrap him into hiring W.S. to murder Bergen County prosecutor Martin Delaney. (*Id.* ¶¶ 67-68, 86-87). Although W.S. purportedly failed to obtain incriminating statements from Dalal, defendants nevertheless allegedly "agreed that, despite their lack of any evidence, they would fabricate first-degree charges of conspiracy to commit the murder of Martin Delaney against [Dalal] to prevent his release from pretrial detention." (*Id.* ¶ 90).

For context,[1] the Court notes that "[o]n June 27, 2012, a detective with the [Bergen County Prosecutor's Office ("BCPO")] applied for and obtained a warrant to search [Dalal's] jail cell. In the warrant application, the detective described the informant [W.S.'s] disclosures to the FBI [regarding Dalal's alleged plan to obtain a gun and murder a Bergen County assistant prosecutor] and the papers [containing the targeted prosecutor's name and an email address] believed to have been written by [Dalal]." *State v. Dalal*, Docket No. A-5556-16, 2021 WL 1424114, at *2 (N.J. App. Div. Apr. 15, 2021) (per curiam). Plaintiff alleges that the warrant application "falsely

---

[1] The Court "may take judicial notice of the contents of another Court's docket." *Orabi v. Attorney Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

2

informed [the Judge], under oath, that [W.S.] had alleged that Plaintiff had threatened Delaney. Anzilotti and Costello concealed the fact that their attempts to entrap Plaintiff into conspiring to commit a murder had failed." (Am. Compl. ¶ 99). "In executing the warrant to search [Dalal's] jail cell, investigators found papers containing the names of BCPO staff and two judges who sit in Bergen County; references to explosives; and notations reading 'dead cops, dead cops.'" *Dalal*, 2021 WL 1424114, at *2. That same day, Dalal was charged with conspiracy to commit the murder of Delaney, terroristic threats against Delaney, and conspiracy to possess a firearm. (Am. Compl. ¶ 100). Dalal's bail on the murder conspiracy charges was set at $3 million cash, (*id.*), and he was unable to secure pretrial release.

In March 2013, a Bergen County grand jury indicted Dalal on various charges including bias intimidation, arson, and terrorism relating to the synagogue attacks. *Dalal*, 2021 WL 1424114, at *2. On August 7, 2013, another Bergen County grand jury indicted Dalal on charges of conspiracy to murder Martin Delaney, conspiracy to possess a firearm, and threatening to commit the murder of Delaney. (Am. Compl. ¶ 120). Following a jury trial in the synagogue case in 2016, Dalal was convicted of numerous charges including terrorism, bias intimidation, and attempted arson. *Dalal*, 2021 WL 1424114, at *1. On July 26, 2017, the murder conspiracy indictment was dismissed on the State's motion. (Am. Compl. ¶ 148). Only July 28, 2017, Dalal was sentenced to a term of imprisonment of 35 years in the synagogue arson case. *See* Judgment of Conviction, ECF No. 10-1.

The crux of plaintiff's Amended Complaint is that the State and Federal Defendants conspired to deprive him of his constitutional rights by manufacturing the murder conspiracy charges to prevent his release on bail in the synagogue arson case. The Amended Complaint asserted claims for malicious prosecution, fabrication of evidence, and conspiracy to violate civil

3

rights pursuant to *Bivens v. Six. Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and common law. All defendants moved to dismiss the Amended Complaint, and the Honorable Madeline Cox Arleo, U.S.D.J. granted the motions in part. *See Dalal v. Molinelli*, Civ. A. No. 20-1434, 2021 WL 1208901 (D.N.J. Mar. 30, 2021) (Federal Defendants' motion to dismiss); *Dalal v. Molinelli*, Civ. A. No. 20-1434, 2021 WL 1207478 (D.N.J. Mar. 30, 2021) (State Defendants' motion to dismiss).[2] Specifically, Judge Arleo dismissed all *Bivens* claims (Counts II, VI, X, XIII) with prejudice for failure to state a claim; substituted the United States in place of the Federal Defendants with respect to the common law malicious prosecution and civil conspiracy claims (Counts IV and VIII) and then dismissed those claims with prejudice on the basis of sovereign immunity to the extent they relate to conduct by defendant Welle; and dismissed all Section 1983 and NJCRA claims against defendants Molinelli, Higgins, and Delaney (Counts I, III, V, VII, IX, XI, XII, and XIV) with prejudice on the basis of absolute prosecutorial immunity. *Id.*

Accordingly, the case proceeded to discovery on certain of plaintiff's malicious prosecution, fabrication of evidence, and conspiracy claims against the State and Federal Defendants. The Court entered a Pretrial Scheduling Order on November 1, 2021 setting a schedule for discovery and a January 31, 2022 deadline for any request for leave to file a motion to add new parties or amend pleadings. (ECF No. 81). At plaintiff's request, the deadline for amending the pleadings was extended to May 2, 2022, and the Court set a final fact discovery deadline of July 1, 2022. (ECF No. 105). Plaintiff now moves for leave to file a Second Amended

---

[2] Judge Arleo separately dismissed all claims in the Amended Complaint against defendants Liliana S. DeAvila-Silebi, Michael Saudino, and Bergen County. (ECF Nos. 60, 61).

4

Complaint that, among other things, formally names the United States as a defendant,[3] names eleven new individual State and Federal Defendants,[4] repleads *Bivens* claims, and adds new claims for aiding and abetting malicious prosecution, intentional infliction of emotional distress, negligence, negligent supervision and training, and violation of the right to counsel and associated civil conspiracy claims.  (Proposed 2d Am. Compl., ECF No. 116-5).

## II.     DISCUSSION

Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court should "freely give leave [to amend] when justice so requires," the Court may deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).  In considering whether plaintiff's delay in seeking to amend the complaint is undue, the Court "focus[es] on the movant's reasons for not amending sooner . . . and balance[s] these reasons

---

[3] As Judge Arleo previously substituted the United States for the Federal Defendants with respect to certain tort claims, the United States is already a party to this action. *Dalal v. Molinelli*, Civ. A. No. 20-1434, 2021 WL 1208901, at *9 n.10 (D.N.J. Mar. 30, 2021).

[4] Namely:  (1) AUSA Andrew Kogan, (2) Thomas J. Eicher, Chief of the Criminal Division of the United States Attorney's Office for the District of New Jersey, (3) Michael B. Ward, Special Agent in Charge of the FBI's Newark Field Office, (4) Robert J. Gibson, Chief Division Counsel of the FBI's Newark Field Office, (5) William F. Sweeney, Assistant Special Agent in Charge of the FBI's Newark Field Office, (6) Scott R. Nawrocki, Supervisory Special Agent in the FBI's Newark Field Office; (7) FBI Special Agent Sharon J. Serra, (8) Jason C. Krayl, an employee of the New Jersey Department of Homeland Security and Preparedness assigned to the FBI, (9) Bergen County Assistant Prosecutor Daniel Keitel, (10) Bergen County Prosecutor's Office Detective Gilbert Warren Breit, and (11) Bergen County Prosecutor's Office Detective and Forensic Examiner Andre DiMino.

against the burden of delay on the District Court." *Id.* (quotation omitted). *See Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (noting that "the movant must demonstrate that its delay in seeking to amend is satisfactorily explained") (quotation omitted)). If the movant fails to explain the delay in seeking to amend, the Court may find such delay to be tactical and thereby undue. *Veneziale v. Quest Diagnostics*, Civ. A. No. 11-4879, 2013 WL 4551178, at *3 (E.D. Pa. Aug. 28, 2013). In some cases, "a significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 629 (3d Cir. 2013).

A proposed amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co.*, 133 F.R.D. at 468. The futility analysis mirrors that of a Rule 12(b)(6) motion to dismiss, *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000), such that the proposed amendment must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The decision whether to allow amendment rests within the "sound discretion" of the Court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001).[5]

---

[5] "[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). As plaintiff's Motion to Amend was not received by the Court until May 17, 2022, fifteen days after the May 2, 2022 deadline, the Federal Defendants contend that the Court should apply Rule 16's more stringent "good cause" standard to plaintiff's request to amend. In accordance with the prison mailbox rule, *pro se* plaintiff's motion is deemed to be filed as of the date he delivered it to prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (per curiam). The Court notes that the envelope in which plaintiff mailed the motion papers bears no dated postmark and the lengthy transit time calls into question whether plaintiff backdated the Motion to Amend to facially meet the filing deadline. However, the Motion to Amend is accompanied by a Certificate

In support of the Motion to Amend, plaintiff contends that he only learned of the identities of the proposed new defendants and the allegations supporting the proposed new claims from documents recently produced in discovery. (Dalal Cert. ¶¶ 65-7, ECF No. 116-3). It goes without saying that the events underlying the proposed Second Amended Complaint occurred more than ten years ago, plaintiff was an active participant in those events, and plaintiff had the benefit of evidence produced throughout his criminal prosecution years prior to commencing this action. Although plaintiff describes generically the discovery he reviewed prior to filing the instant motion, (*id.* ¶¶ 5, 8), he does not specifically identify what information these documents revealed that could be characterized as new. Nor does he identify which of the proposed new defendants were purportedly unknown to him over the course of the past decade; as discussed below, plaintiff was certainly aware of some of the proposed new defendants because he has sued them in other civil cases and identified them by name and title in Notices of Claim. The Court has reviewed the new allegations in the proposed Second Amended Complaint as well as the documents plaintiff submitted as Exhibits 1-5 to the Reply Brief in further support of the Motion to Amend, (ECF Nos. 146-3, 146-4, 146-5, 146-6); other than the alleged theft of privileged documents, which he claims to have discovered in April 2022, plaintiff has not established that any of this information about the events of 2012 could not have been included in the initial complaint filed in 2019 or the Amended Complaint filed in 2020.

---

of Service certifying that plaintiff mailed the motion papers to the Clerk of Court on May 2, 2022, (ECF No. 116-6), and plaintiff submitted a second Certification dated July 14, 2022 again stating under penalty of perjury that he "handed a package containing [the] Motion for Leave to File an Amended Complaint with first-class postage stamps to a South Woods State Prison corrections officer for mailing to the Clerk of Court" on May 2, 2022. (Dalal Cert. ¶ 2, ECF No. 146-1). The Court accepts plaintiff's sworn statements as to the date of mailing, deems the Motion to Amend to be filed on May 2, 2022, and therefore does not consider whether plaintiff has satisfied Rule 16's "good cause" requirement before deciding whether leave to amend should be granted under Rule 15.

Indeed, plaintiff has been actively engaged in a proliferation of litigation concerning the allegedly fabricated murder conspiracy charges since the time of his arrest. While awaiting trial in the synagogue case, plaintiff filed two other civil lawsuits in this District challenging various aspects of his Bergen County criminal prosecution. On March 1, 2013, plaintiff filed *Dalal v. North Jersey Media Group, Inc.*, Civ. A. No. 13-1257 (D.N.J.), against nine defendants including Molinelli, Delaney, Anzilotti, and Costello, alleging, among other things, that he was "falsely and maliciously charged . . . with conspiring to commit the murder of Delaney and conspiring to obtain a handgun." (Compl. ¶ 57, ECF No. 1). On August 19, 2013, plaintiff filed an Amended Complaint adding five new defendants, including proposed defendant DiMino, and a § 1983 illegal arrest claim premised on alleged materially false statements made to secure a warrant for plaintiff's arrest on the murder conspiracy charges. (Am. Compl., Count VII, ECF No. 15). On March 3, 2014, plaintiff filed a related action, *Dalal v. North Jersey Media Group, Inc.*, Civ. A. No. 14-1333 (D.N.J.), which was consolidated into the 2013 case and expanded the action to thirty defendants, including all of the State Defendants, Federal Defendants Coleman, Jerussi, and David, and proposed defendants DiMino and Breit, and thirty-three claims. (2d Am. Compl., ECF No. 41). On December 7, 2015, plaintiff moved before the Honorable William J. Martini, U.S.D.J. for a preliminary injunction preventing Molinelli from prosecuting the allegedly manufactured murder conspiracy charges on grounds that largely parrot the allegations in the instant action. (ECF No. 60). Judge Martini denied the motion and stayed the consolidated *North Jersey Media Group* action pending the outcome of the synagogue arson prosecution. *Dalal v. North Jersey Media Grp., Inc.*, Civ. A. No. 13-1257, 2016 WL 2605986 (D.N.J. May 6, 2016). Although that trial and direct appeal have since concluded, plaintiff has not sought to lift the stay, apparently abandoning

8

the *North Jersey Media Group* case in favor of this one.[6] Viewed through the lens of this procedural history, it is plain that the instant action is a continuation of litigation commenced in 2013 and the proposed Second Amended Complaint is in effect plaintiff's sixth effort to cast an ever-widening net for new defendants to name and new legal theories to pursue for the alleged fabrication of murder conspiracy charges in 2012.

Along with plaintiff's nonspecific explanation for waiting nearly three years to assert the claims in the proposed Second Amended Complaint and the number of times plaintiff has already attempted to reshape his theories of civil liability against the law enforcement personnel involved in his criminal prosecution, the Court also must consider the significant burden of delay that would result from the addition of eleven new defendants and eight new claims to an already expansive case. Fact discovery is presumptively closed. The filing of a Second Amended Complaint would require service of process on eleven additional individual defendants, all of whom would need time to request representation from the State and Federal Government, and all of whom undoubtedly would, like every other previously named defendant, move to dismiss. Plaintiff certainly has not suggested that he would not pursue additional discovery on any surviving claims following adjudication of those motions. *See Ewing v. Cumberland County*, Civ. A. No. 09-5432, 2014 WL 3974159, at *6 (D.N.J. July 16, 2014) (denying leave to amend where "inclusion of the proposed amendments would, at a minimum, require additional factual discovery, would result in significant additional expense, and would further delay this already protracted litigation").

---

[6] Additionally, in 2016, plaintiff filed a lawsuit in the District of Columbia challenging, among other things, the FBI's denial of his requests pursuant to the Freedom of Information Act for records regarding defendant Coleman's use of informant W.S. and for documents concerning Dalal himself. *Dalal v. U.S. Dep't of Justice*, Civ. A. No. 1:16-cv-01040-TJK (D.D.C.). In 2020, plaintiff filed *Dalal v. Krakora*, Civ. A. No. 21-3439-MCA-JRA (D.N.J.) bringing claims related to his legal representation in the appeal of his criminal conviction in the synagogue case.

Considering the breadth and sheer volume of often irrelevant interrogatories, document requests, and deposition questions plaintiff has served to date and the corresponding volume of discovery-related motions and disputes before the Court, it is no overstatement that the filing of a Second Amended Complaint at this stage of the proceedings would further delay resolution the case by years and subject the Court to significant additional motion practice. *See Bjorgung*, 550 F.3d at 267 (affirming denial of leave to amend where delay in filing proposed amended complaint could "send the court through a substantial period of additional discovery and motions"). *See generally* ECF Nos. 108-160 (various discovery dispute letters, pre-motion leave requests, and discovery motions). Thus, the Court finds the proposed Second Amended Complaint as a whole to be the product of undue and prejudicial delay. While the Court could deny the Motion to Amend on this basis alone, it nevertheless proceeds to consider the categories of amendments in plaintiff's proposed Second Amended Complaint.

### A. Addition of Proposed Defendants DiMino, Keitel, Breit, and Ward

Plaintiff's proposed Second Amended Complaint seeks not only to assert the existing malicious prosecution, fabrication of evidence, and conspiracy claims against Bergen County Detective and Forensic Examiner Andre DiMino, Bergen County Assistant Prosecutor Daniel Keitel, Bergen County Detective Gilbert Warren Breit, and/or FBI Special Agent in Charge Michael Ward, but also to add new aiding and abetting, negligence, intentional infliction of emotional distress, and violation of the right to counsel claims. Importantly, plaintiff filed Notices of Claim pursuant to the New Jersey Tort Claims Act and the Federal Tort Claims Act in July 2017 expressing his intention to bring a host of claims against DiMino, Keitel, Breit, and Ward related to the alleged fabrication of murder conspiracy charges – including malicious prosecution, negligence, and intentional infliction of emotional distress. (Proposed 2d Am. Compl. ¶¶ 171-72;

Notices of Claim, ECF No. 133-1). Yet plaintiff inexplicably omitted these defendants from both the initial and Amended Complaints. *Elf Atochem N. Am., Inc. v. United States*, 161 F.R.D. 300, 302 (E.D. Pa. 1995) ("[Plaintiff's] Motion to Amend is untimely because [the proposed amendment] was a claim obvious from the start, if not from before the start of this litigation."). To the extent plaintiff contends that he required discovery in order to assert claims against DiMino, Keitel, Breit, and Ward, review of the proposed Second Amended Complaint and matters of public record suggests otherwise.

The sole substantive allegation relating to DiMino in the proposed Second Amended Complaint is that he "acted in an investigative capacity and [was] present at the crime scenes, interviewed witnesses, collected evidence, and performed other investigative tasks." (Proposed 2d Am. Compl. ¶ 31). Based on this single "new" allegation, plaintiff proposes to assert ten claims against DiMino. There is no suggestion that plaintiff required discovery to allege what amounts to little more than DiMino's job description. Indeed, this minimal information certainly was known to plaintiff long before he filed the initial Complaint because plaintiff sued DiMino for acting in a substantially similar capacity in the *North Jersey Media Group* action in 2013. (Civ. A. No. 13-1257, Am. Compl. ¶ 22, ECF No. 15). Plaintiff offers no justification for waiting years after identifying DiMino as a potential tortfeasor in his 2017 Notice of Claim to attempt to bring him into this case.

With respect to Keitel, both the initial and Amended Complaints in this action repeatedly reference his alleged role in obtaining plaintiff's murder conspiracy indictment but curiously neglected to name him as a defendant. (Compl. ¶¶ 107-15, 133; Am. Compl. ¶¶ 112-20, 138).

11

The proposed Second Amended Complaint asserts eighteen existing and new claims[7] against Keitel but adds only one substantive allegation that was not included in the prior pleadings, namely that Keitel "fabricated a 2013-dated email to the United States Marshall [sic] Juan Matos . . . [and] provided this email to a New Jersey Deputy Attorney General who then submitted the email to the Hon. William J. Martini, U.S.D.J. in opposition to Plaintiff's motion to enjoin the Delaney Case in federal court." (Proposed 2d Am. Compl. ¶ 133). As the allegedly fabricated email was filed on the public docket in plaintiff's *North Jersey Media Group* action on April 29, 2016 and served on his counsel at the time, (Civ. A. No. 13-1257, ECF No. 72-2), this information was available to plaintiff long before he filed the initial Complaint, is not a revelation that occurred in discovery, and cannot justify plaintiff's last-minute attempt to bring Keitel into this case as a party.

With respect to Breit, plaintiff alleges that he, like DiMino, "acted in an investigative capacity and [was] present at the crime scenes, interviewed witnesses, collected evidence, and performed other investigative tasks." (Proposed 2d Am. Compl. ¶ 31). Again, there can be no doubt that plaintiff was aware of Breit's participation in his criminal investigation because he named Breit as a defendant in the *North Jersey Media Group* action in 2014, (Civ. A. No. 13-1257, 2d Am. Compl. ¶ 23, ECF No. 41), and identified Breit as a potential tortfeasor in his 2017 Notice of Claim.

Finally, plaintiff proposes to assert sixteen claims directly against Ward, as well as several tort claims against the United States based on his alleged conduct, all premised on Ward's supervisory role in the FBI's investigation of Dalal. (Proposed 2d Am. Compl. ¶ 32). Again, there is no suggestion that plaintiff required discovery to determine that Ward, the "Special Agent in

---

[7] As Judge Arleo previously dismissed all § 1983 and NJCRA claims against other Bergen County prosecutors with prejudice on the basis of prosecutorial immunity, Dalal acknowledges that his attempt to plead identical claims against Keitel would be futile. (Reply Br. at 24).

12

Charge" of the FBI's Field Office in Newark, acted in a supervisory capacity or that he participated in the FBI's investigation of Dalal; as set forth on the face of plaintiff's Federal Tort Claims Act Notice, those facts were known to plaintiff by 2017 at the latest. Despite his *pro se* status, plaintiff is an active, prolific, and clearly intelligent litigant; given the total lack of explanation for his years-long delay in naming DiMino, Keitel, Breit, and Ward as parties to this action, the Court can only assume such delay was strategic and is therefore undue. *See CMR D.N. Corp.*, 703 F.3d at 630 ("While we are cognizant of the liberal amendment policy of the Rules, it is also true that they give district courts discretion to deny a motion in order to forestall strategies that are contrary to both the general spirit of the federal rules and the liberal amendment policy of Rule 15(a)." (quotation omitted)).

### B.  Proposed New Common Law Tort Claims (Counts XV, XVI, XVII, XVIII)

Relatedly, plaintiff seeks to assert common law aiding and abetting malicious prosecution, intentional infliction of emotional distress, negligence, and negligent supervision and training claims against the United States,[8] the State Defendants, and proposed defendants DiMino, Keitel, and Breit. Again, plaintiff notified the State and Federal Governments of his intention to bring these claims in July 2017 but failed to include them in both the initial and Amended Complaints. Plaintiff makes no argument that he required discovery to substantiate the common law tort claims. In fact, plaintiff's certification in support of the Motion to Amend acknowledges that the proposed new common law tort claims "arise out of the exact same conduct alleged in the original Complaint." (Dalal Cert. ¶ 10, ECF No. 116-3). To the extent plaintiff would argue that the

---

[8] To the extent plaintiff seeks to assert new intentional tort claims against the United States premised on the conduct of AUSAs Welle, Kogan, and Eicher, those proposed amendments would be futile in light of Judge Arleo's prior ruling that the doctrine of sovereign immunity deprives the Court of jurisdiction over intentional tort claims arising from the conduct of federal prosecutors because they are not "investigative or law enforcement officers." *Dalal*, 2021 WL 1208901, at *9.

13

proposed negligent supervision claim is premised on the FBI's Confidential Human Source Policy Implementation Guide, (Proposed 2d Am. Compl. ¶¶ 152-53), the Court notes that while this document may have been produced in discovery, it is also publicly available on the FBI's website, https://vault.fbi.gov/confidential-human-source-policy-guide-1018pg.  In any event, the Confidential Human Source Policy itself does not form the basis of plaintiff's more general contention that the FBI misused confidential informant W.S. to try to entrap him into a murder conspiracy.  Having failed to offer any justification for waiting so many years to follow through with his stated intention to bring these common law malicious prosecution, intentional infliction of emotional distress, and negligence claims, the Court finds plaintiff's proposed amendments to be dilatory.

**C.     Adding New Defendants to Existing Malicious Prosecution, Fabrication of Evidence, and Civil Conspiracy Claims**

Plaintiff proposes to add Eicher, Kogan, Sweeney, Nawrocki, Serra, Krayl, Ward, Gibson, Keitel, Breit, and DiMino to some or all of the existing malicious prosecution, fabrication of evidence, and civil conspiracy claims.[9]  As discussed above, plaintiff's effort to bring Keitel, Breit, DiMino, and Ward into the action as defendants is untimely.  With respect to the remaining new federal employee defendants, plaintiff has not established which, if any, he claims were only recently revealed as participants in the alleged manufacture of murder conspiracy charges against him in 2012.  Again, given the passage of time, evidence produced in the course of his state criminal prosecutions, and his efforts to obtain information through the Freedom of Information Act and other litigation, the Court is unpersuaded that the proposed new federal defendants could not have been named in either the initial or Amended Complaints.  For example, plaintiff's written

---

[9] Common law claims are asserted against the United States based on the conduct of the proposed new federal defendants.

14

discovery requests indicate that he was aware of proposed defendant Krayl's identity and alleged participation in the murder conspiracy charges before discovery was produced in this action. *See* Plaintiff's December 13, 2021 First Set of Interrogatories to Defendant Lawrence Judson Welle, Rog. No. 15, ECF No. 113-3 (requesting information regarding Task Force Officer Jason Krayl). Moreover, plaintiff seeks to assert claims against certain of the proposed new defendants in their supervisory capacities. Plaintiff does not, and could not credibly, claim that he was unaware of the existence of the Federal Defendants' supervisors or of the fact such supervisors may have directed or participated in his investigation. Plaintiff's July 2017 Notice of Claim stated his intention to pursue claims against Paul Fishman and Michael Ward, the highest-ranking supervisory personnel in the United States Attorney's Office for the District of New Jersey and the FBI's Newark Field Office at that time, (Proposed 2d Am. Compl. ¶ 171; ECF No. 133-1), and yet he failed to name any supervisory defendants or supervisory liability claims before now. Plaintiff's attempt to expand the existing malicious prosecution, fabrication of evidence, and conspiracy claims to include up to twenty-one defendants three years into this litigation is insufficiently justified, would impose an undue burden on the existing defendants, and would frustrate the Court's ability to ensure the just, speedy, and inexpensive determination of this action in accordance with Rule 1 of the Federal Rules of Civil Procedure.

### D.     *Bivens* Claims (Counts II, VI, X, XIII)

By Opinion and Order dated March 30, 2021, Judge Arleo dismissed with prejudice all *Bivens* claims seeking damages for malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights. *Dalal*, 2021 WL 1208901, at *4 (noting that "the vast majority of courts—including the Third Circuit and this Court—have declined to extend a *Bivens* remedy to prosecutorial misconduct and fabrication of evidence cases, finding that these cases present new

*Bivens* contexts"). Plaintiff's proposed Second Amended Complaint repleads the previously dismissed *Bivens* claims[10] and also asserts these claims against proposed defendants Eicher, Kogan, Sweeney, Nawrocki, Serra, Krayl, Ward, and Gibson. However, plaintiff acknowledges that he cannot revive *Bivens* claims in a Second Amended Complaint following Judge Arleo's dismissal of those claims with prejudice. (Reply Br. at 14, ECF No. 146-2). To the extent plaintiff nonetheless attempts to bring new *Bivens* claims against Eicher, Kogan, Sweeney, Nawrocki, Serra, Krayl, Ward, and Gibson, Judge Arleo's ruling that a *Bivens* remedy is unavailable to plaintiff is the law of the case, which this Court is bound to follow. *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) ("Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988))). Accordingly, leave to amend to assert *Bivens* claims against the current Federal Defendants, Eicher, Kogan, Sweeney, Nawrocki, Serra, Krayl, Ward, and Gibson is denied as futile.

**E.     Proposed Violation of the Right to Counsel Claims (Counts XIX, XX, XXI, XXII)**

Plaintiff proposes to add the following new allegations, which purportedly came to light in discovery produced by the Federal Defendants: "During and between March 2, 2012 and June 1, 2012, Plaintiff compiled notes and legal research about his defense and trial strategy in documents and used these documents at his meetings with his defense attorney for the purpose of forming defense and trial strategy and obtaining advice from his defense attorney." (Proposed 2d Am. Compl. ¶ 176). "On or about June 1, 2012, at the direction of the Federal Defendants and the BCPO Defendants, FBI informant [W.S.] stole 6-pages of attorney-client privileged documents

---

[10] As plaintiff's *Bivens* claims were dismissed with prejudice, it is not necessary that he replead them in order to preserve his appellate rights. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007).

containing defense and trial strategies that Plaintiff had prepared for the purpose of a meeting with his defense attorney and to provide to his defense attorney." (*Id.* ¶ 177). On June 1, 2012, W.S. gave the 6 pages to FBI agents, who in turn disclosed the documents to employees of the Bergen County Prosecutor's Office on June 27, 2012. (*Id.* ¶¶ 178-79). Thus, plaintiff alleges, members of the Bergen County Prosecutor's Office who participated in his criminal prosecution accessed privileged information about his defense and trial strategy. (*Id.* ¶ 180). Based on the alleged theft of six pages of privileged documents, plaintiff seeks to assert claims for violation of the right to counsel and conspiracy to deprive plaintiff of his right to counsel pursuant to § 1983 and the NJCRA. (Proposed 2d Am. Compl., Counts XIX, XX, XXI, XXII). The existing Federal Defendants contend that leave to amend to assert the right to counsel claims and associated factual allegations should be denied as futile.

Plaintiff explicitly rejects the Federal Defendants' characterization of these as claims for denial of access to courts in violation of the First Amendment. (Reply Br. at 21). Instead, plaintiff seeks civil redress for the alleged violation of his 6th Amendment right to counsel. *See United States v. Costanzo*, 740 F.2d 251, 254 (3d Cir. 1984) ("The sixth amendment is also violated when the government (1) intentionally plants an informer in the defense camp; (2) when confidential defense strategy information is disclosed to the prosecution by a government informer; or (3) when there is no intentional intrusion or disclosure of confidential defense strategy, but a disclosure by a government informer leads to prejudice to the defendant."). Taking as true the allegations in paragraphs 174-180 of the proposed Second Amended Complaint, the claims for violation of the right to counsel could not survive a motion to dismiss, and leave to amend to assert these claims, as well as the associated conspiracy claims, must be denied.

In *Humphrey v. Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87 (1994). *See Obchinetz v. Maple Shade Twp.*, A-4289-13T4, 2015 WL 3869711, at *4 (N.J. App. Div. June 24, 2015) (applying *Heck* bar to claims under the NJCRA).

As the complaint for the murder conspiracy charges did not issue until June 27, 2012, (Proposed 2d Am. Compl. ¶¶ 113-14), the information allegedly contained in notes compiled between March 2, 2012 and June 1, 2012 can only refer to defense and trial strategy for the synagogue arson case. The Court may take judicial notice of the fact that plaintiff was convicted of numerous charges in the synagogue arson case in 2016. *Dalal*, 2021 WL 1424114, at *3. A finding that the prosecutors in the synagogue arson case purloined and reviewed privileged information about his defense and trial strategy would suggest that the conviction in that case was obtained in violation of plaintiff's 6th Amendment rights, thereby implying the invalidity of that conviction. *See Carrier v. Lundstedt*, Civ. A. No. 13-cv-02933-PAB-CBS, 2015 WL 1041835, at *4 (D. Colo. Mar. 4, 2015) (noting "because plaintiff must challenge the reliability of the trial process in order to establish that the alleged interference in his relationship with trial counsel violated plaintiff's Sixth Amendment rights, . . . a judgment in plaintiff's favor would call into question whether plaintiff's conviction was obtained in violation of his Sixth Amendment rights" and dismissing § 1983 claim pursuant to *Heck*); *Brown v. Gulash*, No. 07-cv-370-JPG-PMF, 2011

WL 2516765, at *2 (S.D. Ill. June 23, 2011) (dismissing § 1983 claim for violation of the right to counsel pursuant to *Heck* because it "would reveal the conviction was obtained in violation of Brown's Sixth Amendment rights. A judgment in this case that Brown's Sixth Amendment rights had been violated would necessarily imply the invalidity of his conviction"). *See also Williams v. Taylor*, Case No. 18-cv-2933, 2019 WL 2357041, at *2 (N.D. Ill. June 4, 2019) ("[I]t appears well-established that any Sixth Amendment [§ 1983] claim—especially those asserting that a prisoner was denied access to counsel—necessarily implicates the validity of any underlying conviction in state court and is therefore *Heck*-barred."). As plaintiff has not alleged that his conviction in the synagogue case has been reversed or otherwise invalidated, his § 1983 and NJCRA right to counsel claims would be barred by *Heck* and are therefore futile.[11] It follows that the associated claims for conspiracy to deprive plaintiff of the right to counsel would similarly fail.

F. **Extraneous Factual Allegations**

To the extent not otherwise addressed above, leave to amend to add any and all other extraneous factual allegations – including, but not limited to, allegations regarding an alleged investigation of Molinelli for bribery, FBI informant W.S., transcription of recorded conversations, the FBI's Confidential Human Source Policy Implementation Guide, and supervision of a Counter-Terrorism squad – is denied as untimely. This ruling does not prevent plaintiff from relying on

---

[11] To the extent plaintiff alleges that the June 1, 2012 theft of privileged documents regarding his defense and trial strategy in the synagogue arson case somehow violated his right to counsel in the murder conspiracy case, the Court notes that the 6th Amendment right to counsel is offense specific and, with respect to the murder conspiracy case, no such right had attached on June 1, 2012. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) ("The Sixth Amendment right, however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." (quotation omitted)).

19

any documents or other evidence underlying such allegations to support his existing claims during the summary judgment and/or trial phases of the case.

### III. CONCLUSION

For the foregoing reasons, plaintiff's Motion to Amend (ECF No. 116) is **DENIED**.

Dated: October 28, 2022

                                                 *s/ Leda Dunn Wettre*
                                                 Hon. Leda Dunn Wettre
                                                 United States Magistrate Judge